Good morning, your honor. May it please the court. Dr. Brokamp wants to have conversations with New Yorkers about their lives, their relationships, their emotions. That's it. She doesn't want to prescribe medication or conduct any medical procedures, and she certainly doesn't want to misrepresent her qualifications. New York says it's a prohibitor from what she says. They just want to ensure that she's competent. Well, your honor, the Supreme Court has said repeatedly in Sorrell and in Playboy Entertainment that when the state imposes content-based burdens on speakers... There's no content restriction here. Your honor... This isn't for Sarah. This is licensing with regard to competency. But the definition of... Does the state have an interest in competency? It does, your honor, but the state also has a burden of proof to demonstrate that its speech burdens are tailored to meet its interests. May I be clear as to what your client is challenging? Is she challenging the New York licensing law by itself, or is she challenging the endorsement law that would apply to her? Your honor, she's challenging it both facially as a whole and as applied to her. Which law? The entire licensing law. How does she have any standing to challenge the licensing law that would apply to someone, you know, seeking their first license? What she would have to satisfy is the license by endorsement law. Well, she is standing because she's currently being burdened. The scope of relief... New York wouldn't require her to seek a license where she had to satisfy all the same procedures and requirements of someone who had no license. In any event, she is licensed in Virginia, correct? That's correct. And she's not challenging that scheme? She's not. Why not? Well, she was licensed 20 years ago. But she has to get it renewed every... I mean, doesn't she have to show that she's taken the continuing education classes, etc.? So, if we're talking about standing question, that's... No, no. Now I'm asking... It's just the Virginia licensing requirement. So, we believe that if she challenged the Virginia licensing requirement, she would prevail there. She's not elected to. These burdens have become more severe as her practice moved online and her clients have moved to different jurisdictions. But, you know, certainly she would have standing to challenge that. She just has chosen not to. I know you want us to apply strict scrutiny here rather than intermediate scrutiny or any other standard to this statute. Why doesn't the state satisfy strict scrutiny here, especially with respect to the licensed by endorsement statute? Because it's black letter law that under strict scrutiny or intermediate scrutiny, the state has the burden of proof. And it can't carry that burden at a motion to dismiss. It needs real evidence to do that. Well, it could if we can look to matters of public record to do that. I mean, the fact that this is a health statute right away gives them all kinds of authority. The fact that 50 states require licensing of this kind of a medical professional also weighs in their favor. And the fact that licensing by endorsement, as I understand it, your client can satisfy each and every requirement of license by endorsement, except perhaps demonstrating that she's gone through the recognizing child abuse condition. Well, Your Honor. So it seems to me to be the kind of thing that would satisfy even strict scrutiny. What am I missing? Your Honor, the distinction is between what the state's interest is, which courts have been willing to take judicial notice of and assume for purposes of argument, and tailoring, which courts have never accepted. The courts have never accepted narrow tailoring arguments at a motion to dismiss. And whether or not the state has a valid interest, we don't really dispute that this involves the health of New Yorkers. But health was at stake in Sorrell and in NIFLA. And the court still applied strict scrutiny there. Your Honor, I'm suggesting to you, if we were to apply strict scrutiny, why couldn't we say right now that they satisfy it? Because the state has, we haven't had discovery, we haven't had a chance to. What is it you don't know? We don't know about the tailoring. We don't know what evidence they have to show that this particular regime of licensure. You have the statute. You have the whole statutory scheme. Your Honor, I would direct you to this court's decision in Ramos. That was an intermediate scrutiny case decided after a full trial on the merits where the court said, look, we have no doubt that you have a legitimate interest here. But you are not showing us a connection between these particular regulations and this particular problem. Let me ask you this. I know that all of the complaint has to be read in the light most favorable to your client. But what are you saying isn't sufficiently narrowly tailored with the endorsement law? Your Honor, there's no evidence that they need to have an endorsement provision whatsoever. New York being satisfied with her being licensed in Virginia, to which she doesn't object, somehow isn't narrowly tailored? Your Honor, New York allowed her to practice without getting a license by endorsement previously. Well, that was during the pandemic. You didn't answer my question. Why is it, it's so curious that she's licensed in Virginia and apparently doesn't object to that presumably also not narrowly tailored statute. And yet New York says all she has to do is present her Virginia credentials to which she doesn't object. And she says it, she hasn't in any way articulated that somehow her First Amendment rights are somehow conscribed there. And yet all she has to do is use that. And somehow that New York somehow has imposed a First Amendment violation on her. Well, Your Honor, maybe it hasn't, but that's a question for summary judgment. I'm running out of time here, but I just- You are. Well, I have another question. Just to understand your client's position, is it her position that, I mean, she's had advanced degrees, she's taken courses, she's done a lot of things. Is it her position that anyone ought to be able to practice this kind of talk therapy? No requirements, that there should be no licensing of this kind of treatment. Well, that would be the facial relief, Your Honor, and yes, it is. That is, in fact, what's happening. Is it her position? I mean, let me ask you that seriously. I mean, this is a woman who's had a lot of training in this area. Her attitude is that anyone off the street ought to be able to hold themselves out as this kind of a therapist? Nobody, she's not arguing that anyone has the right to misrepresent their qualifications. But New York currently allows people to have precisely these kinds of conversations for pay under the rubric of life coaching. It doesn't require it if they call themselves a counselor. Your client does a lot more than coach on life, styles and things like that. I mean, your client is treating people. If I understand her position, she's not suggesting that she helps people, she's a life coach. That's not what she calls herself, but the conversations are effectively saying that- For this kind of a mental health professional. Our position today, Your Honor, is that at the very least, the state has the burden of proof. And no court has ever held that they can carry that under strict scrutiny at a motion to dismiss stage. Thank you. I take your answer as yes, then, to her question. Yes, sir. Thank you. We'll hear from counsel from state. Good morning. Good morning. May it please the court, Frederick Brody for appellees. The judgment should be affirmed. As the court pointed out, all 50 states, DC, and Puerto Rico require mental health counselors to be licensed. There's a reason. People who need counseling may have serious disorders like addiction, anorexia, and depression. They're highly vulnerable. Treating those patients isn't just talking. It's not just a conversation. Trained mental health counselors apply their expertise to evaluate, assess, ameliorate, treat, modify, or help patients adjust to disorders. That is conduct. While there's talking involved, the speech is incidental. It's a tool for delivering treatment. The conduct of mental health counseling is the counselor's application of her expertise to treat the patient's problem. Now, before I get to the substance, I want to reach the procedural point that counsel raised. The district court properly granted defendant's motion to dismiss on 12B6. This is a facial challenge. Facial doesn't mean hold an evidentiary hearing. It means you look at the statute on its face. Courts may grant a motion to dismiss under 12B6 in a case involving intermediate scrutiny. What statute do you think we should look at? I think you should look at the entire, the statute we cited in our brief, which is the entire corpus of statutes that were adopted in 2002. This plaintiff doesn't need to get what I'll call an ab initio license. She can get licensed by endorsement. Why would we, in this case, even consider the constitutionality of the license scheme for someone who was coming to New York without any other license? Well, if the court wishes to focus on licensing by endorsement, that's an easy one for us. Because licensing by endorsement is what tailors the law to accommodate people in Dr. Brokamp's position. It makes it easy for an out of state licensed professional to come into New York and get her license. But you ask us to review the entirety of 8402, right? The entire statutory scheme. Well, that's what we understood appellant to be challenging. So that's what we defended. But one component of that statutory scheme is licensing by endorsement. And licensing by endorsement is precisely what makes it easier, what accommodates people in Dr. Brokamp's position. You didn't argue standing with respect to the overall scheme. But to the extent that standing has a jurisdictional aspect to it, we would be required to consider it. What is in your view is for standing to challenge the ab initio licensing statute?  I think your Honor is correct that since she qualifies for licensure by endorsement, there's no reason why she would need to go through the licensure statute ab initio. Now, of course, if she applied for licensing endorsement and were denied, then she would have standing. But she hasn't applied for any type of license in New York. She's just sat in Virginia and she hasn't even attempted to treat people in New York since the pandemic. At least as we gather from the complaint. And that's why she doesn't have standing to bring an as applied challenge. But let me go back to the facial challenge and the motion to dismiss. In our brief, we cited Libertarian Party of Erie County as an example of a case where under intermediate scrutiny, this court granted a motion to dismiss. Now that case has been disapproved by the Supreme Court since we filed our brief. So if the court will indulge me, I would like to cite another case out of the many where this court has affirmed the grant of a 12B6 motion under intermediate scrutiny. And that would be Quorum Against Condos, 898F3-209. That's a 2018 decision of this court involving campaign finance rules. There's also another decision, same posture, involving financial disclosure requirements. Am I right in understanding that we would have to find that this is a regulation of conduct for which speech was incidental to apply intermediate scrutiny? Correct, I think- So let me ask you with respect to making that determination. In Reed v. City of Gilbert, the Supreme Court talks about how sometimes you look at what the speech on its face is drawing distinctions based on the message a speaker conveys, that that's easy. And I don't think there's an argument here that this law in any way limits the message the speaker can convey. But Reed goes on to say that says, some facial distinctions are more subtle, defining regulated speech by its function or purpose. And I'm wondering here whether the law regulates speech by its purpose. Say anything you want, but if your purpose in saying it is to provide mental health treatment, we are going to regulate it. Is that what Reed is talking about? Because if you don't think it is, I need you to explain it to me. I don't think it is, and the Supreme Court has clarified this point recently in City of Austin, on which we submitted a 28-J letter. In that case- I think we're on this point, though, but let me hear you as to what I may be missing. Right, well, the court said in City of Austin that restrictions on speech may require some evaluation of the speech. And nonetheless, remain content neutral. And that brings me- I want to clarify my question when I said yes to what Your Honor asked about what brings in intermediate scrutiny. You also get intermediate scrutiny if you're content neutral and viewpoint neutral. Now here, you're content neutral. The licensure statute just sets qualifications for becoming a mental health counselor. It doesn't agree or disagree with any particular message. It bars all unlicensed mental health counseling, regardless of content. And the standards for education and experience, to which Your Honor alluded, don't dictate what counselors may say during treatment sessions. Regulating science can be, the purpose of a particular sign might imply some kind of content control. But when you're talking about professionals, at least Becerra reiterated that conduct, as long as it's conduct that's being regulated as opposed to content, as long as it's facially neutral. Then that's an appropriate distinction to draw, correct? That's exactly right, Your Honor. And when you look at this statute, the definition of mental health counseling focuses on the counselor's conduct in applying expertise to treat patients. It defines, quote, the practice of mental health counseling, close quote. And practice is a critical word here. And it includes conduct like evaluation, assessment, amelioration, treatment, modification, adjustment, verbal or behavioral methods. Those are all conduct. I understand that, but it's only done, all of those functions are only done by speaking. In this case, so it's not like getting a license as a medical doctor who may have all kinds of consultations with his or her patient. But is prescribing medication, is ordering tests, is doing all kinds of things. The disquiet here may come from the fact that whatever you say the person is doing, the only way they're doing it is by speaking. Well, I would push back on that, Your Honor, because the core conduct here goes on in the counselor's head. When the counselor applies her expertise in formulating a treatment plan and deciding how to treat the patient and then applying it, the speaking is a method of delivering treatment. But its use is wholly subsidiary to the professional's ongoing exercise of judgment and expertise, and that- How else would she be able to perform her duty? She couldn't. It's not the same as a conversation when you talk to your friend, because your friend who's trying to comfort you is not a trained expert and is not applying the expertise. Well, they're a trained expert because you say they have to have the training. I mean, the real reason they're regulated is because they're charging money for it. Right. She's got a website. She's charging money. If she weren't charging money, I'm not sure you would be able to do this. I mean, you can talk to a very sympathetic and wise aunt. You can talk to any of a number of people. It's the fact that they're charging money and holding themselves out as some kind of professional. Do you want to tell us anything more about why we shouldn't feel this is a regulation of speech? I would say that, well, first of all, when one looks at the legislative record, money isn't in there. The profession was supporting regulation. All of these mental health counseling organizations wrote letters in saying that they wanted this licensing scheme. And there's- Of course they want the licensing scheme. It's helpful for them, it's helpful for their services. It also maintains a level of professionality and professionalism and conduct. But that's not, I don't know, I don't understand that that answers Judge Raggi's set of questions about how we are to analyze whether this is speech. And I may agree with you that it's conduct as opposed to speech, but how do you analyze it in this case, which is a very, very narrow set of circumstances where it's teletherapy. The entirety of it is speaking to a client. There are services involved, but there's no medication involved, there's no other prescription involved. Well, one could go to a physician and you talk to the physician, that's speech. Physician gives you a diagnosis, that's speech. Physician writes a prescription, writing is speech. Everything that happens in that visit is speech. But why is it conduct? It's because the physician's a professional, and the physician's applying her professional knowledge and expertise to treat the patient. And as the Ninth Circuit pointed out in Tingley, a case from September 6th, on which we also put in a 28J letter. You can treat someone through a scalpel, or you can treat someone by speaking to them, but it's still treatment. And that does not speak to the purpose, that speaks to what is actually being done. And when one looks at the statute, it's clearly a conduct statute. It's the practice of mental health counseling. I see my time has expired, unless the court has further questions, I'll rest on the brief. Thank you very much. Thank you. Your Honor, just a point about the burdens here. It's not just about New York, it's about cumulative burdens when my client's patients are moving all over, and she's having an entirely online practice. It may be a streamlined process to get into New York by endorsement, it's also a streamlined process to waive into another bar. How does the endorsement provision chill her speech? Because there are additional costs and administrative burdens. I could get a New York bar license if I wanted to waive in, but if I had to do that to be here today, I wouldn't be here today because this is a one-off argument for me, and very few lawyers are registered. Pro hoc feature. Your Honor? Yeah, you'd move pro hoc feature, right? I'm admitted to the Second Circuit, but I'm not admitted to New York, which is streamlined for someone with more experience, but certainly not easy. I think it's analogous to what's going on here with counselor licensing. Were you doing pure speech? Should my, I'm the one who signs the admission certificates. Am I violating your First Amendment rights when I impose that admission requirement on you? Your Honor, I believe courts have the authority to decide who can appear before them. I don't think that's ever been questioned. Why? They have- Don't talk. Just the same way public schools can require licenses for public school teachers, even though private school teachers- Maybe it's because you make legal arguments, and so your speech conveys thoughts and principles. That's correct, and I think if we- So we require someone who knew something about them before they came into the court, although there are varying levels of that. So we do have an interest in competency, you think? Absolutely. You think the people of New York have the same interest with regard to people who are advising with regard to those who are in mental health crises? We're not disputing the interest, Your Honor, we're disputing the tailoring. Well, that's what I keep coming back to is, what is too broad about this? What would you say would be something that might be narrowed? So, I think that restrictions on professional conduct that don't require an advanced licensure, which is common in many fields where people are fiduciaries, for instance- I'm sorry, so you're saying they should admit your client even without her having a license in Virginia? That would be a facial challenge, at least as to somebody who's licensed elsewhere, as the state was doing during the- I'm willing to entertain your argument that it's not narrowly tailored enough. If I understand, what you're saying is an undue burden or an unnecessary burden given their interests. You said you acknowledge their interests. So what's an undue burden with the licensure by endorsement? I mean, as I understand- Fees, administrative burdens- It's the fees. It's the fees. You mentioned the fees, that's all you mentioned. Recurring continuing education requirements, which are more stringent in New York than in Virginia. Really? What's more stringent? And I'm not doubting you, I just didn't see that when I tried to look myself about what the requirements were. I believe New York requires 36 hours and Virginia requires 20. So the 16 hour difference. Right, and these are- Would she get credit in New York for the 20 hours in Virginia? We don't know, Your Honor. But I would just like to point out, this is a prior restraint on speech in Watchtower Bible. I'm not sure I see the licensure by endorsement statute requiring a continuing education program. I mean, maybe the licensure up in issue does. But the only thing I see here is completion of course work on the identification and reporting of suspected child abuse. Is it clear that as long as you're licensed in another state, that they don't just accept the education requirements of that state? Our understanding was that the continuing education requirements had to be met. Based on what? Where did you get that understanding? As I said, I'm not doubting it, it's just I haven't seen it myself. I believe that's what our client heard. I'm not sure- Completed in your complaint. Okay, thank you. I've got a question. Is there, I'm assuming that you're familiar with all the counseling requirements in the 50 states and territories. Is there a statutory provision in some other state or state laws to provide teletherapy there? At present, your honor, no. The way a lot of these worked previously is that they were titling laws before they became licensure laws. So you could have- So if we were to apply the rule that you seek nationwide, that would result in the elimination of all of these counseling statutes, is that correct? If it's facial relief, that's likely, your honor. Did I also understand you correctly that you do not suggest that by analogy, our imposing requirements for you to be admitted pro haft vici to argue in this court. You're not suggesting that presents a First Amendment violation, nor are you suggesting that requiring teachers to be licensed presents any kind of First Amendment violation? No, your honor. In both cases, I think the court has the right to decide who gets to appear before it. It's inherent authority to- Your answer is to the question why? Why is that? So in the case of teachers, the state can decide what qualifications it wants for people it is going to hire. But teachers are not required to be licensed to teach at private schools. And in the case of the courtroom here, I think the court similarly is allowed to But I think if we look at the up-solved decision, if regulation targets a part of the practice of law, that is itself just pure speech, then we are in normal First Amendment land, which is different. I would have thought that the government regulating who can speak to the government, whether it's a court or school or whatever, actually aggravates the problem. But for the government to say it will only hear certain people and won't hear speech from others, that's as much of a First Amendment problem as limiting speech in other contexts, no? Well, anyone can appear pro se before the courts of the United States, my understanding. And maybe- Right, but you couldn't. You couldn't be appearing for your client, per se. Your client could appear pro se, but not you on her behalf. I mean, we're talking about licensing the lawyer now. That's correct, Your Honor. And you're saying no problem with that, but there is a problem when New York tries to license mental health therapists. Right, and we agree that there's no issue with New York saying that the people who are going to work in its own facilities or who are going to be funded by state programs, they can have whatever credential the state requires. Yes. Thank you very much. Thank you. We'll reserve the decision.